## Dattner v. Lamm et al.

*Bernstein & Bernstein*, for plaintiffs.

*W. G. George, A. L. Freedman*, City Solicitor, *I. K. Levy*, Assistant City Solicitor, and *M. A. Foley*, for defendants.

REIMEL, J., May 27, 1955.—This is an action in trespass for injuries sustained by plaintiff, Arline

Dattner, a pedestrian, who was struck by the automobile operated by defendant on Frankford Avenue and Benner Street in the City of Philadelphia. Defendant upon being served with a copy of the complaint issued a writ to join the City of Philadelphia as an additional defendant. In his complaint defendant alleged that the City of Philadelphia was negligent in failing to have the street lights illuminated at the intersection where the collision occurred, that the city failed to supply electrical current to said lights within a reasonable time after the city knew or should have known that the lights were not operating and thereby failed to illuminate the person of plaintiff so that her approach into the highway could have been seen by defendant, and that under the Home Rule Charter the city had the power and the duty to install, repair, maintain and operate equipment for lighting the streets of the city. Preliminary objections to defendant's complaint were filed by additional defendant alleging that additional defendant is under no legal obligation to light the intersection in question, that it is not liable for damages resulting from its failure to have its street lights lit and in working order and that as the operation of street lights is a governmental function there is no liability for negligence arising therefrom.

Where there is an obstruction or dangerous condition in a street the city may be held accountable because of the inadequacy of the warning. In the matter before this court no obstruction or dangerous condition is pleaded. It has been held that there is generally no legal duty on the part of a municipality to light its streets and that it cannot be held responsible for a mere insufficiency of light: Horner v. Philadelphia, 194 Pa. 542, 544; O'Rourke v. Washington City, 304 Pa. 78, 80, 81. Moreover, in the absence of a statutory command or charter duty a municipality

is not bound to illuminate its streets when their construction is reasonably safe for travel: Canavan v. Oil City, 183 Pa. 611, 616, 617.

The allegation by defendant that the Philadelphia Home Rule Charter imposes a legal duty on the city to illuminate its streets is without merit.

Section 5-500 of the Home Rule Charter provides:

". . . The Department of Streets shall have the power and its duty shall be to perform the following functions:

"(b) *Lighting.* The Department shall itself, or by contract, locate, design, install, repair, maintain and operate equipment for lighting City streets and for that purpose supply electric current and gas to such equipment."

This provision of the Home Rule Charter merely regulates the operation of its executive and legislative function and does not impose an absolute duty upon the city for its failure to illuminate its streets which are reasonably safe for travel: Baily v. Philadelphia, 184 Pa. 594, 604. While the Home Rule Charter regulates the performance of administrative duty by the commissioner of streets an absolute duty, the breach of which would render the city liable in damages for negligence, is not imposed.

### Order

And now, to wit, May 27, 1955, the preliminary objections of additional defendant, City of Philadelphia, are sustained and third party plaintiff's complaint against additional defendant, City of Philadelphia, is dismissed.

WEINROTT, J., August 11, 1955.—Plaintiff, a pedestrian, instituted an action in trespass for injuries sustained when she was struck by defendant's automobile at or near the intersection of Benner Street and Frankford Avenue in the City of Philadelphia.

Defendant driver joined the City of Philadelphia and the Philadelphia Electric Company as additional defendants, alleging that each was solely liable or liable jointly or severally with defendant for its negligence in failing to light the street lights at the scene of the accident. Defendant averred in its complaint against the Philadelphia Electric Company that the accident of which plaintiff complains occurred on a dark night at a time when the street lights should have been lit, i.e., October 19, 1954, at or about 10:20 p.m. There were present at the intersection where the accident occurred street lights, which, if lit, would have illuminated the scene and immediate vicinity of the accident, and further would have illuminated the person of plaintiff, Arline Dattner, so that her approach from defendant's left side would have been observed by defendant in time for defendant to have avoided her. Defendant further averred that the street lights were not lit because of the negligence of the Philadelphia Electric Company in not having these lights in working order, and in not supplying electrical current to the lights within a reasonable time after the company knew, or should have known, that the lights were not operating.

Preliminary objections interposed by additional defendant, City of Philadelphia, were sustained in an opinion by Reimel, J., on the ground that the Home Rule Charter does not impose an absolute duty upon the municipality to furnish street lights, with which we agree.

Additional defendant, Philadelphia Electric Company, then filed a motion for judgment on the pleadings.

The sole issue raised by this motion is whether a public utility furnishing electricity for street lights and operating and maintaining the same under a contract with a municipality is liable in tort to a pedes-

trian or motorist for negligence in failing to light the streets.

The now pertinent averments of defendant's complaint against the Philadelphia Electric Company set forth that section 5-500 of the Home Rule Charter empowered the city by itself, or by contract, to maintain and operate equipment for lighting the streets and for that purpose to supply electric current, that additional defendant contracted with the city to furnish, operate and maintain electrical service for the street lights and to have them in proper working condition and lit every night of the year between dusk and dawn.

Defendant argues that the basis for the city's non-liability does not inure to the benefit of the Philadelphia Electric Company.

No cases directly on point involving a public utility supplying lights or electricity have been cited by either of the parties in their respective briefs. However, a careful analysis of the cases which we have examined dealing with the furnishing of water by a public utility pursuant to a contract with a municipality clearly indicates that the issue now before this court has been adjudicated.

In Thompson v. Springfield Water Co., 215 Pa. 275, defendant, a private company engaged in the business of furnishing water to consumers, entered into a contract with the township to furnish an adequate supply of water for the purpose of extinguishing fires which might occur on the premises of property owners in the township. Plaintiff instituted an action in trespass to recover for damages for the destruction of his property by fire caused by defendant's negligence in failing to provide an adequate supply of water. Defendant filed a demurrer. Our Supreme Court there held that even if it was assumed that the proximate cause of the de-

struction of plaintiff's property was the insufficiency of the water supply, since the township was under no legal duty to provide a supply of water for the extinction of fires, a water company which has been engaged by the municipality to perform this particular function is not liable to a resident of the township for loss from fire, although the company is negligent in not providing an adequate supply of water.

This decision is supported by the weight of authority in the United States. See Moch v. Rensselaer Water Co., 247 N. Y. 160, 159 N. E. 896; German Alliance Ins. Co. v. Home Water Supply Co., 226 U. S. 220. See also 26 Temple Law Quarterly 214.

The rationale of the court was that when a municipality procures a private company to furnish a water supply, such company is thereby made the agent of the municipality in the performance of a governmental function and there should not be any higher obligation imposed on the agent than on the principal.

It has been held that the Public Utility Law of May 28, 1937, P. L. 1053, has not changed this common-law principle: Rainey v. Natrona Water Co., 49 D. & C. 152; Hudak v. Scranton Spring Brook Water Service Co., 39 D. & C. 346.

There is complete analogy between the case of a private company furnishing street lighting under contract with a municipality and that of a private firm supplying water for the residents pursuant to a contract with the municipality. In both instances the city has delegated a governmental function to a private company. Since no absolute duty remained with the municipality to furnish the service, there was no obligation on the part of the municipality or its agents to continue it.

We deem the law well settled with respect to liability in this kind of case and conclusive as authority for the instant case.

558

*Order*

And now, to wit, August 11, 1955, the motion of additional defendant, Philadelphia Electric Company, for judgment on the pleadings is granted.