Thomas DAVID

v.

**BROADWAY MAINTENANCE CORPORATION**

v.

Charles W. ROWLAND, Jr.

**Civ. A. No. 77–1097.**

United States District Court, E. D. Pennsylvania.

June 6, 1978.

Gustine J. Pelagatti, Philadelphia, Pa., for plaintiff.

Manfred Farber, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Thomas David filed the complaint in this tort action on March 25, 1977. Jurisdiction is based solely on diversity of citizenship. 28 U.S.C.A. § 1332(a) (Supp.1977). Presently before me is Broadway Maintenance Corporation's motion for summary judgment. *See generally* Fed.R.Civ.P. 56. For the reasons hereafter stated, I conclude that summary judgment may not be entered.

The facts of this case, viewed in the light most favorable to the plaintiff,[1] may be briefly stated. In the early morning hours of December 5, 1976, the plaintiff, Thomas David, was driving south on 52d Street in Philadelphia when he observed a burning, smoking automobile parked on the other side of 52d Street, beyond the intersection he was approaching. All the street lights on both blocks of 52d Street were out. After David drove through the intersection, he

---

1. *See, e. g., Bishop v. Wood*, 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

was able to see a man inside the burning vehicle. David then pulled over to the curb opposite the other vehicle, got out of his own automobile, and began to cross the street in order to reach the other man. While he was in the middle of 52d Street, however, David was struck by an automobile driven by Charles H. Rowland, Jr., the third-party defendant. Rowland did not see David until after the impact occurred, when David was thrown onto the hood of Rowland's vehicle.

David subsequently brought this action against Broadway Maintenance Corporation, a New York corporation that had undertaken, pursuant to a municipal contract, to maintain and repair the street lights on all public streets in the city of Philadelphia. The complaint alleges that the accident involving David and Rowland occurred due to Broadway Maintenance Corporation's negligence in "maintaining and/or replacing street lamps" on 52d Street, including those on the block where the collision took place. Complaint ¶ 7(a). In particular, David alleges that the inoperative street lamps on 52d Street "prevented the driver of the . . . vehicle which struck the plaintiff from seeing plaintiff in view of the fact that there was great fire and smoke in the area which was poorly lighted." *Id.* ¶ 7(e).

Broadway Maintenance Corporation (hereafter Broadway) then moved to dismiss the complaint under Rule 12(b)(6). This motion was denied without prejudice, whereupon Broadway filed a third-party complaint against Rowland, the driver of the vehicle that struck David. Both David and Broadway pursued discovery, and on February 24, 1978, Broadway filed the summary judgment motion that is now before me.[2]

Summary judgment, of course, is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e. g., Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Broadway contends here that it is entitled to judgment because David's claim against it, which is grounded on negligence, is legally insufficient.

The principal argument runs as follows. (1) In order to prevail on a negligence theory, the plaintiff must establish that the defendant was under a duty to use reasonable care in his conduct with respect to the plaintiff. (2) The city of Philadelphia was under no duty to provide street lights on a public street. (3) Broadway, as an agent of the city, assumed no higher duty when it undertook to maintain and repair the city's street lights. (4) Inasmuch as Broadway was under no duty to David, it cannot be held liable to him for negligence.

In assessing Broadway's position, I must apply the law of Pennsylvania. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Broadway is clearly correct that the breach of a legal duty is an essential element of any cause of action based on negligence. *See, e. g., McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir. 1960); *Drexel v. Union Prescription Centers, Inc.*, 428 F.Supp. 663 (E.D.Pa.1977); *Boyce v. United States Steel Corp.*, 446 Pa. 226, 230, 285 A.2d 459 (1971) (plurality opinion); W. Prosser, Torts § 30 at 143, § 53 at 324 (4th ed. 1971).

I also accept, for present purposes, Broadway's second proposition—that the city of Philadelphia was under no duty to provide street lights.[3] *See O'Rourke v. Washington City*, 304 Pa. 78, 155 A. 100 (1931); *Horner v. City of Philadelphia*, 194 Pa. 542, 45 A. 330 (1900) (per curiam); *Canavan v. Oil City*, 183 Pa. 611, 38 A. 1096 (1898); *Wecksler v. Philadelphia*, 178 Pa.Super. 496, 502–03, 115 A.2d 898 (1955); *Datt-*

---

2. In the space of seven weeks, the parties filed a motion for summary judgment, an answer in opposition thereto, a rebuttal to the answer, a supplemental brief in opposition, a replication to the supplemental brief, a final supplemental brief in opposition, and a rejoinder to the final supplemental brief.

3. I note, however, that this point apparently has not been re-examined since the Supreme Court of Pennsylvania abolished municipal tort immunity in *Ayala v. Philadelphia Bd. of Public Educ.*, 453 Pa. 584, 305 A.2d 877 (1973).

*ner v. Lamm*, 5 D. & C.2d 552, 553, 557 (C.P.Phila.County 1955) (city of Philadelphia not liable for failure to maintain street lights). The remainder of Broadway's argument, however, is not on such firm ground.

With respect to proposition (3), Broadway relies primarily on *Thompson v. Springfield Water Co.*, 215 Pa. 275, 64 A. 521 (1906). In that case, the township of Lower Merion had engaged the defendant water company to install and service a number of fire hydrants, and to furnish sufficient water to the hydrants for firefighting purposes. Thompson sought damages from the water company after his property was destroyed due to "the insufficiency of the only available hydrants," but the trial court entered judgment for the water company. 215 Pa. at 278, 64 A. at 522. On appeal, the Supreme Court of Pennsylvania affirmed; the following language from its opinion is pertinent here:

> "[The plaintiff] rests his case wholly upon the negligence of the defendant in the performance of a public duty which it had voluntarily assumed. Did any legal public duty in this behalf rest upon the defendant? The determination of this case depends upon the answer to this question. . . . Presumably from consideration of economy and convenience, instead of establishing a municipal water plant with the necessary equipment . . ., the municipality . . engaged the defendant company . . . It thereby made the defendant its agent to discharge for it this particular function, and since the act of the agent in the proper exercise of authority is the act of the principal, a correlative must be that, in doing the act no higher or other duty . . . can rest on the agent than would have rested on the principal . . . The case on this point, therefore, may be considered as though the municipality, and not the agent, were directly involved."

215 Pa. at 279, 64 A. at 522.

The court went on to state that a municipality could not be held liable for interrupting, or even discontinuing, a service it was not required to provide in the first place, and that therefore the water company, as the city's agent, likewise could not be held liable for negligently interrupting or discontinuing that service once the city chose to provide it.

Although *Thompson* plainly supports Broadway's third proposition, the authority of that decision was significantly undercut by two companion cases decided by the Supreme Court of Pennsylvania in 1964. *See Malter v. South Pittsburgh Water Co.*, 414 Pa. 231, 198 A.2d 850 (1964); *Doyle v. South Pittsburgh Water Co.*, 414 Pa. 199, 199 A.2d 875 (1964). *Doyle* and *Malter* both presented facts indistinguishable from those in *Thompson*, and so the water company involved in both cases relied heavily on *Thompson*. The court in *Doyle* began by observing: "We need not say whether under similar facts that decision would today be followed." 414 Pa. at 206, 199 A.2d at 878. The court went on to distinguish *Thompson* as a case where the plaintiff sought to impose liability for breach of a duty to supply water. *Id.* It then stated:

> "Here the situation is entirely different. The plaintiffs are not relying on the defendant's breach of duty to supply water but on its breach of duty to use reasonable care in the operation and maintenance of a water system which the defendant had in fact set up in the vicinity of the plaintiffs' property.
>
> Thus, the water company is not charged with the failure, through the municipality, to perform an act, which the court in the *Thompson* case said was a discretionary act. . . . Discretion having been exercised and the physical fact of that exercise having become a fait accompli, reasonable care in the maintenance and repair of the planted hydrants became imperative."

*Id.* at 206–07, 199 A.2d at 878.

In short, *Thompson* would aid the defendant here only if David sought to recover from breach of a duty to *provide* street lights. The complaint, however, clearly alleges negligence in "maintaining and/or replacing" the street lights in question. Complaint ¶ 7(a). "[T]his allegation of negligence exemplifies the type of conduct for which liability could be imposed

under the *Doyle* precept." *Printed Terry Finishing Co. v. City of Lebanon,* 247 Pa. Super. 277, 281, 372 A.2d 460, 465 (1977). Thus, Broadway is not shielded from liability simply because the city could have chosen not to install street lights at all.

Broadway cites *Dattner v. Lamm,* 5 D. & C.2d 552 (C.P.Phila.County 1955), and several other cases for the proposition that a municipality has no duty even to *maintain* street lights once it installs them. *Dattner,* however, relied primarily on the *Thompson* case, which is no longer very weighty authority. None of the other decisions cited by Broadway concern the duty to maintain services once they are undertaken, and, in any event, the more recent authorities tend to refute Broadway's contention. *See, e. g., Printed Terry Finishing Co. v. City of Lebanon, supra*; Restatement (Second) of Torts § 324A (1965). *See generally, Blessing v. United States,* 447 F.Supp. 1160 at 1187–1188 (E.D.Pa.1978).

Broadway also contends that this case is controlled by *Jamison v. City of Pittsburgh,* 360 F.2d 162 (3d Cir. 1966) (per curiam). As I read the brief per curiam opinion in *Jamison,* however, the court of appeals there held only that the maintenance of traffic lights was a governmental function, and that, under Pennsylvania law, the city of Pittsburgh was therefore *immune from suit* for any negligence in failing to properly maintain such lights. Subsequent to the decision in *Jamison,* moreover, the Supreme Court of Pennsylvania abolished the governmental immunity formerly enjoyed by municipalities in the exercise of governmental, as opposed to proprietary, functions. *See Ayala v. Philadelphia Bd. of Public Educ.,* 453 Pa. 584, 305 A.2d 877 (1973). Thus, the governmental-proprietary distinction is no longer significant, and *Jamison,* insofar as it turned on that distinction, would not be followed today. *See also* note 3 *supra* and accompanying text.

▮ Finally, Broadway argues that "[e]ven if by some legal contortion, defendant might be said to be negligent in failing

to maintain the street lights, such negligence, as a matter of law, could not be the proximate cause of plaintiff's accident, under the facts on which plaintiff relies." Rebuttal to Answer (Document No. 43) at 3 (citation omitted). Ordinarily, of course, the jury determines whether the defendant's negligence was the proximate cause of the plaintiff's injury. *See, e. g., Schreffler v. Birdsboro Corp.,* 490 F.2d 1148, 1154 (3d Cir. 1974); *Arkwright Mut. Ins. Co. v. Philadelphia Elec. Co.,* 427 F.2d 1273, 1275 (3d Cir. 1970); *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974); *Evanuik v. University of Pittsburgh W. Psychiatric Inst. & Clinic,* 234 Pa.Super. 287, 338 A.2d 636 (1975); Restatement (Second) of Torts § 328C(c) & Comment c, § 434(a)(a) (1965). Broadway contends, however, that this case comes within the recognized exception applicable where "the critical facts are not in dispute and only their legal effect is in issue." *Schreffler v. Birdsboro Corp., supra,* 490 F.2d at 1154.

Broadway's argument emphasizes two aspects of this case. First, Broadway points out that the burning automobile that attracted David's attention was giving off a great deal of smoke, thereby obscuring Rowland's view as he drove down 52d Street. Second, Broadway calls attention to David's deposition testimony that the headlights on Rowland's vehicle were not illuminated at the time the accident occurred. David Deposition at 64–65. This, Broadway contends, was negligence per se on Rowland's part, inasmuch as it violated section 4302 of the Vehicle Code, 75 Pa. Cons.Stat.Ann. § 4302 (Purdon 1977).[4] In short, Broadway argues that the accident was proximately caused by the smoke and by Rowland's negligence in driving without headlights, rather than by the absence of light from the street lights on 52d Street.

▮ The proximate cause requirement in a negligence action "requires a showing of more than 'but for' causation in fact; it requires that the conduct in issue also be a 'substantial factor' in bringing about the

---

4. Section 4302 provides in pertinent part that "[e]very vehicle upon a highway at any time between sunset and sunrise and at other

times when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly dis-

harm." *Klages v. General Ordinance Equip. Corp.*, 240 Pa.Super. 356, 373, 367 A.2d 304, 313 (1976); *see* Restatement (Second) of Torts § 431 (1965). On the facts stated here, I believe that a jury could reasonably conclude that the absence of light from the street lights on 52d Street was both a "but for" cause of the collision and a "substantial factor" in bringing about that collision. Although a jury might well reach the contrary conclusion on either or both of these issues, that is plainly no warrant for resolving the proximate cause issue as a matter of law. So long as a jury reasonably *could* find that the defendant's conduct proximately caused the plaintiff's injuries, the plaintiff is entitled to a jury determination on that issue.

Moreover, even if, as Broadway contends, the accident was proximately caused by Rowland's negligence and by the smoke coming from the burning vehicle, that would not alter the result here. An event may, of course, have more than one proximate cause. *See, e. g., Jones v. Piper Aircraft Corp.*, 18 F.R.D. 181 (M.D.Pa.1955). *Compare* Restatement (Second) of Torts § 432(2) (1965) *with id.* § 439. Thus, assuming *arguendo* that the collision was proximately caused by Rowland's negligence, or by the thick smoke in the air, or by both, a jury nevertheless might reasonably find that the absence of light from the street lights was also a proximate cause of the accident, in which event Broadway would not be relieved of liability.

Broadway apparently contends that, in any event, Rowland's failure to use headlights while driving between sunset and sunrise was a superseding cause of the collision, and that Broadway should therefore be relieved of liability as a matter of law. Assuming *arguendo* that Rowland's conduct amounted to negligence per se, I nevertheless cannot conclude that his conduct was a superseding cause as a matter of law. The law of Pennsylvania plainly states that a negligent intervening act performed by a third party will not relieve the

cernible from a distance of 1000 feet ahead shall display lighted head and other lamps and illuminating devices as required under this chapter  . . . ."

defendant of liability unless that act was so extraordinary as not to have been reasonably foreseeable. *See, e. g., Eshbach v. W. T. Grant's & Co.*, 481 F.2d 940 (3d Cir. 1973); *Wilson v. American Chain & Cable Co.*, 364 F.2d 558 (3d Cir. 1966); *Drew v. Laber*, Pa., 383 A.2d 941, 944 (1978) (Pomeroy, J., concurring); *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); Restatement (Second) of Torts § 447(b) (1965). I cannot say as a matter of law that Rowland's negligence in driving without his headlights falls in this category. Accordingly, I cannot resolve the proximate cause issue in this case, but must leave it to the jury.

For the reasons stated above, Broadway is not entitled as a matter of law to a judgment in its favor, and its motion for summary judgment will be denied.

It is not disputed that 52d Street is a "highway" as that term is used in the Vehicle Code. *See* 75 Pa.Cons.Stat.Ann. § 102 (Purdon 1977) (definition of "highway").